1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

7
8

9  MICHAEL THOMAS,                          1:08-cv-00646 DLB HC

10             Petitioner,            ORDER GRANTING RESPONDENT'S
                                      MOTION TO DISMISS THE INSTANT
11       v.                           PETITION AS UNTIMELY, AND
                                      DISMISSING PETITION WITH PREJUDICE
12
13  D.G. ADAMS, Warden                        [Doc. 11]

14             Respondent.
    _____/

15

16       Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to

18  the jurisdiction of the United States Magistrate Judge.  (Court Doc. 12.)

19                              PROCEDURAL HISTORY

20       Petitioner is currently in the custody of the California Department of Corrections and

21  Rehabilitation serving a state court conviction and judgment.

22       In the instant petition, Petitioner does not challenge the validity of his conviction or

23  sentence; rather, he contends that the disciplinary decision finding him guilty of conspiring to

24  distribute a controlled substance at High Desert State Prison.

25       The Rules Violation Report ("RVR") was issued on April 19, 2004, and charged

26  Petitioner with conspiracy to introduce narcotics into the institution for the purpose of

27  distribution.  (Exhibit 1, to Motion.)  A hearing was held on June 2, 2004, and Petitioner was

28  found guilty as charged in the RVR.  (Id. at 2-9.)

1

1    Petitioner filed a timely administrative appeal, which was denied at the final level of

2   review on April 11, 2005.  (Exhibit 2, to Motion, at 27.)

3    Thereafter, on April 23, 2006,[1] Petitioner filed a petition for writ of habeas corpus in the

4   Lassen County Superior Court challenging the disciplinary action.  (Exhibit 3, to Motion, at 34.)

5   The petition was denied on June 9, 2006.  (Exhibit 4, to Motion.)

6    On July 30, 2006, Petitioner filed a state petition for writ of habeas corpus in the

7   California Court of Appeal, Third Appellate District, which was denied on August 24, 2006.

8   (Exhibit 5, to Motion, at 43; Exhibit 6.)

9    Then, on July 5, 2007, Petitioner filed a petition in the California Supreme Court, which

10   was denied on August 22, 2007.  (Exhibit 7, to Motion, at 55; Exhibit 8.)

11    Petitioner filed the instant federal petition for writ of habeas corpus on March 30, 2008.

12   (Court Doc. 1.)

13    Respondent filed the instant motion to dismiss on July 21, 2008.  (Court Doc. 11.)

14   Petitioner filed an opposition on August 14, 2008, and Respondent filed a reply on August 25,

15   2008.  (Court Docs. 13, 14.)

16                                    DISCUSSION

17   A.    Procedural Grounds for Motion to Dismiss

18    Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a

19   petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not

20   entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

21    The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer

22   if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of

23   the state's procedural rules.  See e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990)

24   (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White

25   _____

26    [1] Under the "mailbox Rule" pleadings filed by inmates are deemed filed when signed and delivered to
     prison officials.  See Rule 3(d) of the Federal Rules Governing Section 2254 Cases; See Houston v. Lack, 487 U.S.
27   266 (1988) (deeming a prose prisoner's notice of appeal filed at the moment it was delivered to prison authorities for
     forwarding to the clerk of court).  The Ninth Circuit Court of Appeals held in Saffold v. Newland, 250 F.3d 1282,
28   1288-89 (9th Cir. 2000 amended May 23, 2001) that the "mailbox" rule as provided for in Houston also applies to
     state and federal petitions with respect to calculating the statute of limitations under the AEDPA.

                                         2

1    v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review

2    motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12

3    (E.D. Cal. 1982) (same).  Thus, a respondent can file a motion to dismiss after the court orders a

4    response, and the Court should use Rule 4 standards to review the motion.  See Hillery, 533 F.

5    Supp. at 1194 & n. 12.

6          In this case, Respondent's motion to dismiss is based on a violation of 28 U.S.C.

7    2244(d)(1)'s one-year limitations period.  Therefore, the Court will review Respondent's motion

8    to dismiss pursuant to its authority under Rule 4.

9    B.    Limitation Period for Filing a Petition for Writ of Habeas Corpus

10         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

11   of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas

12   corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059,

13   2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), cert. denied, 118

14   S.Ct. 586 (1997).  The instant petition was filed on March 30, 2008, and thus, it is subject to the

15   provisions of the AEDPA.

16         The limitations period begins to run when "the factual predicate of the claim . . . could

17   have been discovered through due diligence."  28 U.S.C. § 2244(d)(1)(D); Redd v. McGrath, 343

18   F.3d 1077, 1081 (9th Cir. 2003).  Where, as in this instance, an administrative decision is

19   challenged, the factual predicate is discovered when the inmate's administrative appeal of that

20   decision is denied.  Shelby v. Bartlett, 391 F.3d 1061, 1066 (9th Cir. 2004).

21         Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed

22   application for State post-conviction or other collateral review with respect to the pertinent

23   judgment or claim is pending shall not be counted toward" the one year limitation period.  28

24   U.S.C. § 2244(d)(2).  In Carey v. Saffold, the Supreme Court held the statute of limitations is

25   tolled where a petitioner is properly pursuing post-conviction relief, and the period is tolled

26   during the intervals between one state court's disposition of a habeas petition and the filing of a

27   habeas petition at the next level of the state court system. 536 U.S. 214, 215 (2002); see also

28   Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 120 S.Ct. 1846 (2000).

Nevertheless, state petitions will only toll the one-year statute of limitations under § 2244(d)(2) if the state court explicitly states that the post-conviction petition was timely or was filed within a reasonable time under state law. Pace v. DiGuglielmo, 544 U.S. 408 (2005); Evans v. Chavis, 546 U.S. 189 (2006). Claims denied as untimely or determined by the federal courts to have been untimely in state court will not satisfy the requirements for statutory tolling. Id.

Statutory tolling is also available if a petitioner's overall untimeliness was caused by a state-action that violated the Constitution or federal law, and prevented the petitioner from filing. 28 U.S.C. § 2244(d)(1)(B); see also Bryant v. Schriro, 499 F.3d 1056, 1059-60 (9th Cir. 2007).  In order for entitlement to statutory tolling, a petitioner must show (1) a state action that violated federal law or the Constitution, and (2) the action was the cause of his untimely filing.  Bryant, 499 F.3d at 1059-1060.

The limitations period is subject to equitable tolling if the petitioner demonstrates: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. at 418; see also Irwin v. Department of Veteran Affairs, 498 U.S. 89, 96 (1990); Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), citing Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th Cir. 1996), cert denied, 522 U.S. 814 (1997). Petitioner bears the burden of alleging facts that would give rise to tolling. Pace, 544 U.S. at 418; Smith v. Duncan, 297 F.3d 809 (9th Cir.2002); Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir.1993).  Equitable tolling is not available, despite extraordinary circumstances, where the petitioner has not otherwise been diligent in pursing his claims.  Pace, 544 U.S. at 418-419.

Petitioner's administrative appeal was denied at the final level of review on April 11, 2005, and this date triggered the running of the one-year limitations period.  (Exhibit 2.) Therefore, the statute of limitations was set to expire one-year later on April 11, 2006, and absent a basis for statutory or equitable tolling, the instant petition is untimely.

       1.    Delay Prior to Filing First State Petition for Writ of Habeas Corpus

As previously stated, Petitioner's administrative review concluded on April 11, 2005, and the first state petition was not filed until April 23, 2006, 377 days after.  Petitioner argues that he

1   is entitled to both statutory and equitable tolling for this entire period of time because on

2   December 1, 2004, prison Institutional Gang Investigators (IGI) confiscated and refused to return

3   his paperwork relating to the challenge of his disciplinary action. (Opposition, at 3.) Petitioner

4   indicates he immediately filed an administrative appeal requesting that his materials be returned

5   to him. (Id. at 3, 13.)[2]

6          As Respondent correctly submits, the response to Petitioner's inmate grievance flatly

7   contradicts his claim. The response states that on November 2, 2004, IGI searched his property

8   and confiscated one address book, twelve letters and two inmate cards. (Id. at 12.) On

9   December 3, 2004, one address book, nineteen photographs and miscellaneous paper work was

10  returned to the administrative segregation unit property, and as of January 5, 2005, all property

11  was returned. (Id.) It was noted that all of the property allowable in administrative segregation

12  had been provided to Petitioner. (Id. at 14.) It was further noted the IGI did not have possession

13  of an "incident package dated 03/05/2004," and such document could not be returned to

14  Petitioner. (Id.) Accordingly, Petitioner has failed to demonstrate that there was any illegal state

15  action or extraordinary circumstance which prevented the timely filing of his federal petition, and

16  tolling is not available.

17         Petitioner also contends that he is entitled to tolling based on his lack of knowledge of

18  the institution's mail-room policy and his lay-man status. (Opposition, at 4-5.) Petitioner states

19  that on December 22, 2005, he was transferred to California State Prison in Corcoran, and his

20  property was immediately confiscated. Then on January 4, 2006, a limited amount of his

21  property was returned and the remainder was mailed to his family's address, which included the

22  necessary paperwork for filing a petition. On February 2006, he received the material back from

23  his family and immediately began to draft his petition. After it was complete, he sent it to his

24  father for formatting and typing, and it was returned to him in March 2006. However, prison

25  staff returned the petition to his father indicating that it exceeded the two-pound weight limit on

26  incoming mail. His father thereafter divided the petition into smaller/lighter portions and a

27

28         [2] Because the exhibits attached to Petitioner's opposition are not numbered or otherwise referenced, the
Court will refer herein to the page numbers as reflected on the Court's electronically-stamped filing system.

1  complete copy of the petition was received by Petitioner on April 14, 2006.

2        Petitioner indicates that upon his arrival at Corcoran, he requested and reviewed a copy of

3  the mail-room policy and it did not mention the two-pound limit for incoming mail.  Petitioner

4  contends that because he was unaware of the weight limit, he was delayed in receiving his

5  petition back from his father.  (Id. at 4-5.)  In his inmate grievance, Petitioner requested "a copy

6  of the rules regarding incoming mail . . . the limits on paper, stamps, envelopes, photos, etc. that

7  we can receive."  (Id. at 18.)  In response to Petitioner's request, he was provided with

8  information regarding the type of miscellaneous items he was allowed to possess and, as

9  requested, the limits on the number of envelopes, cards, legal pads and notebooks, photos,

10  stamps, and stationary.  (Id. at 19-20.)  Although, as Respondent submits, this was not a complete

11  list of all the mail-room procedures, it was nonetheless a complete response to Petitioner's

12  request.

13        In any event, as Respondent points out, Petitioner did not act diligently in filing his

14  petition in the superior court, as he delayed 377 days, and the alleged one-month delay due to the

15  returned mail was not the *but-for* cause of his federal petition being untimely.  Bryant v. Schriro,

16  499 F.3d at 1061 (holding equitable tolling available only where petitioner shows untimeliness

17  was caused by external impediment, and not petitioner's own lack of diligence); see also Gaston,

18  417 F.3d at 1034-1035 (holding petitioner must show causal connection between grounds upon

19  which he asserts right to equitable tolling and inability to timely file federal habeas petition).

20  Simply stated, Petitioner has not established he was diligently pursing his rights, and he is

21  therefore not entitled to equitable tolling based on his alleged unawareness of the prison mail-

22  room policy.

23        In addition, Petitioner's status as a lay-man and lack of legal knowledge does not entitle

24  him to equitable tolling.  Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (a petitioner's

25  lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable

26  tolling); Shoemate v. Norris, 390 F.3d 595, 598 (8th Cir. 2004) (petitioner's misunderstanding of

27  proper procedures under state law for filing a certain motion did not warrant equitable tolling);

28  Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (ignorance of the law, including existence

1    of the AEDPA, insufficient to warrant tolling); Felder v. Johnson, 204 F.3d 168, 171-172 & n.10

2    (5th Cir. 2000) (petitioner's unawareness of AEDPA's filing requirements insufficient to warrant

3    equitable tolling).

4           2.     Delay Between Denial by California Appellate Court and Filing in California
                   Supreme Court
5

6           As previously stated, the California appellate court denied Petitioner's petition on August

7    24, 2006, and there was a 315-day gap between filing the petition in the California Supreme

8    Court on July 5, 2007.  Petitioner contends the delay was caused by his limited access to the law

9    library, his inability to consult with another inmate for legal assistance, and the fact he was

10   unable to purchase manilla envelopes.  (Opposition, at 8-9.)

11          As Respondent submits, performing legal research, gathering exhibits, and drafting and

12   mailing pleading naturally precede and are routine obstacles to filing a petition, and the time

13   allotted to such tasks is simply not entitled to additional tolling because that time is inherently

14   built into the one-year limitations period.

15          As Respondent correctly argues, the fact that Petitioner had to wait for a turn to use the

16   law library during its hours of operation does not violate his federal constitutional rights or

17   constitute an extraordinary circumstance.  First, the Constitution does not guarantee a prisoner

18   unlimited access to the law library, and prison officials are able to freely regulate the time,

19   manner and place of the use of the library facility.  Lindquist v. Idaho State Bd. of Corrections,

20   776 F.2d 851, 858 (9th Cir. 1985).  Indeed, in Lewis v. Carey, 518 U.S. 343 (1996), the Supreme

21   Court clarified that due process is not implicated with respect to access to the law library if the

22   inmate has the basic ability of presenting his claims to the courts, regardless of the "capability of

23   turning pages in a law library."  Id. at 356-357.  Thus, the fact that Petitioner had less access to

24   the law library than desired, he was totally or substantially denied access during the time the

25   limitations was running.  Nor has Petitioner shown how he was prevented from filing the instant

26   action in a timely manner merely because he access to the library was limited.  As stated in

27   Lewis, "prison law libraries and legal assistance programs are not ends in themselves, but only

28   the means for ensuring a reasonably adequate opportunity to present claimed violations of

1  fundamental constitutional rights to the courts." <u>Lewis</u>, 518 U.S. at 351 (internal quotations

2  omitted).

3         In addition, the fact that Petitioner chose to deliver his paperwork to another inmate for

4  assistance in drafting the petition, does not warrant tolling because such circumstance was wholly

5  within his own control, and is not an extraordinary circumstance. <u>Pennslyvania v. Finley</u>, 481

6  U.S. 551, 557 (1987) (state not required to provide appointed counsel in state post-conviction

7  proceedings); cf. <u>Tacho v. Martinez</u>, 862 F.2d 1376, 1381 (9th Cir. 1988) (lack of legal assistance

8  and reliance on incompetent jailhouse lawyers not cause to excuse procedural default); <u>Miles v.</u>

9  <u>Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999) (equitable tolling only available "if extraordinary

10 circumstances beyond a prisoner's control make it impossible to file a petition on time."). In any

11 event, as Respondent submits, even if the four to six week period that Petitioner contends staff

12 prevented him from accessing another inmate for assistance were tolled, there was still over a six

13 month gap, which Petitioner is not entitled to gap tolling. <u>Chavis</u>, 546 U.S. at 199-201.

14        Lastly, with regard to Petitioner's claim that the law library would not sell him manilla

15 envelopes to mail his petition, it too does not entitle him to tolling. In fact, the evidence

16 Petitioner submits does not support his claim. The prison response to Petitioner's complaint

17 states that manilla envelopes are available for purchase in the library as long as the envelopes

18 were addressed and mailed from the library, and the inmate may purchase as many envelopes as

19 necessary, however, extra envelopes could not be purchased to take outside of the library.

20 (Opposition, at 29-33.) Thus, contrary to Petitioner's claim, he has not shown that he was

21 deprived of purchasing envelopes to mail his petition. Therefore, Petitioner has failed to

22 establish that he is entitled to statutory or equitable tolling for the ten-month gap between filings.

23
                  3.      <u>Delay Between the Denial by the California Supreme Court and Filing Federal</u>
24                        <u>Petition in This Court</u>

25        Petitioner further argues that he is entitled to statutory and equitable tolling for the 221-

26 day delay between the denial by the California Supreme Court on August 22, 2007, to filing the

27 instant federal petition on March 30, 2008, due to limited access to the law library including a

28 twenty-two day library closure, a prison lockdown, his pursuit of legal assistance from another

1   inmate, and library staff's error in his copying requests.  (Opposition, at 8-10, 39-40.)

2          Although a lengthy law library closure may warrant tolling, the twenty-two day closure in

3   this instance is too insubstantial for the delay of 221 days in filing the instant petition untimely.

4   Furthermore, the fact that there was a prison lockdown also does not justify tolling, because such

5   circumstance, although unfortunate, is a routine consequence of imprisonment.  Moreover,

6   Petitioner does not provide sufficient factual detail to support an inference that such lockdown

7   was the but-for cause of his untimely filing.

8          In addition, Petitioner's inability to file the writ due to the failure of legal assistance is not

9   sufficient, because prisoners in California are not entitled to legal assistance including inmate

10  assistance, in collateral proceedings as a matter of right.  Pennslyvania v. Finley, 481 U.S. at 557

11  (state not required to provide appointed counsel in state post-conviction proceedings); see also

12  Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002) (denying equitable tolling for attorney

13  negligence because there is no right to effective assistance of counsel for post-conviction relief.);

14  cf. Hughes v. Idaho Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (lack of legal assistance

15  is generally insufficient to justify cause for procedural default).  Thus, the lack of inmate

16  assistance does not constitute an "external force" that prevented Petitioner from filing a timely

17  claim.  See Miles v. Prunty, 187 F.3d at 1107 (equitable tolling only available "if extraordinary

18  circumstances beyond a prisoner's control make it impossible to file a petition on time.").

19         In sum, Petitioner has provided nothing more than vague and generalized assertions of the

20  routine circumstances inmates face when attempting to file a petition for writ of habeas corpus in

21  this Court, and such circumstances do not distinguish him from the vast majority of all other

22  inmates; accordingly, tolling under such situations would render AEDPA's limitations period

23  meaningful as the majority of inmates are likewise faced with the same problems.  Petitioner has

24  failed to demonstrate that "extraordinary circumstances" stood in his way of filing a timely

25  federal petition.  Accordingly, Respondent's motion to dismiss shall be granted.

26                                            ORDER

27         Based on the foregoing, it is HEREBY ORDERED that:

28         1.      Respondent's motion to dismiss is GRANTED; and,

                                              9

1      2.       The instant petition for writ of habeas corpus is DISMISSED, with prejudice, as

2                time-barred under § 2244(d)(1).

3   IT IS SO ORDERED.

4  **Dated:**    **September 5, 2008**         **/s/ Dennis L. Beck**
                                     UNITED STATES MAGISTRATE JUDGE